UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STEPHEN KERN,

          Plaintiff,

v.

JAMES DZURENDA *et al*,

          Defendant.

Case No. 2:19-cv-00721-RFB-DJA

**ORDER**

### I. INTRODUCTION

Before the Court are Defendant Bradburn's Motion for Summary Judgment, ECF No. 33, and Plaintiff Stephen Kern's Motion for Summary Judgment, ECF No. 42.

For the reasons stated herein, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

### II. PROCEDURAL HISTORY

On April 26, 2019, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* ("IFP"). ECF No. 1. The case was screened on March 24, 2020. ECF No. 9. Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Bradburn was permitted to proceed. Id. Plaintiff's state law claims were dismissed without prejudice. Defendant Dzurenda was also dismissed from the case. Id. The IFP application was deferred pending mediation. Id.

On October 8, 2020, the IFP was granted and Defendant was served. ECF No. 17. The Court entered a scheduling order on January 12, 2021, ordering discovery due by April 12, 2021. ECF No. 21. The Court subsequently granted a 60-day extension of the discovery deadline. ECF No. 26.

On July 12, 2021, Defendant filed a Motion for Summary Judgment. ECF No. 33. Plaintiff responded on September 9, 2021. ECF No. 48. Defendant replied on October 25, 2021. ECF No. 58. On August 20, 2021, Plaintiff filed a Motion for Summary Judgment. ECF No. 42. Defendant responded on October 25, 2021. ECF No. 57. Plaintiff replied on November 8, 2021.

This order follows.

### III.   FACTUAL BACKGROUND

#### A.   Undisputed Facts

The Court finds the following facts to be undisputed based on the record:

On June 7, 2017, Plaintiff was being escorted through the sally port door at High Desert State Prison ("HDSP"). He was escorted by nonparty Correctional Officer ("CO") Earnest.

The sally port door is a large mechanical door operated through computer command by an officer in a nearby tower. Defendant Bradburn was operating the computer controls for the sally port door at the time Plaintiff was being escorted through.

Plaintiff subsequently filed an informal grievance with the Nevada Department of Corrections ("NDOC"), alleging that he was hit by the sally port door due to Defendant Bradburn's failure to wait for CO Earnest to give a verbal "clear" command before initiating the closing sequence. On June 12, 2017, the grievance was rejected. The reason provided for the rejection was that Plaintiff failed to submit an administrative claim form along with the grievance as required. Plaintiff subsequently submitted another grievance, which was again rejected – this time because Plaintiff failed to submit the grievance on the proper NDOC grievance form. Plaintiff filed a third and final grievance thirty days later, which was rejected as untimely. Because the grievance was untimely filed, Plaintiff could not appeal the determination.

On March 27, 2018, Plaintiff filed a small claims complaint in Las Vegas Justice Court,

alleging that an NDOC staff member closed the sally port door before the escorting officer gave a clear verbal command, causing the sally port door to hit Plaintiff, causing injury. On June 20, 2018, the Las Vegas Justice Court held a hearing on the matter. On June 25, 2018, the court found that Plaintiff failed to prove his claim by a preponderance of the evidence.

Plaintiff appealed the judgment to the Eighth Judicial District Court. The court dismissed his appeal as untimely.

### B. Disputed Facts

The Court finds the following facts to be in dispute: whether Plaintiff was hit by the sally port door, causing injury; whether HDSP correctional staff had a policy or practice of using a verbal command to indicate to the sally port door operator that he/she could safely initiate the closing sequence; and whether Defendant Bradburn failed to wait for a verbal "clear" command before closing the sally port door, causing the door to hit Plaintiff.

### IV. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## V.     PARTIES' ARGUMENTS

Defendant argues summary judgment is appropriate because (1) Kern's claims are barred by both issue and claim preclusion; (2) Kern failed to exhaust his administrative remedies; (3) on the merits, Kern has failed to establish deliberate indifference by Defendant Bradburn; and (4) Defendant Bradburn is entitled to qualified immunity.

First, Defendant argues Kern's claims are barred by issue preclusion because Plaintiff filed a complaint in state small claims court alleging the same underlying issue – that he was hit by a sally port door, causing injury, due to Defendant's negligence. Defendant argues that issue was decided in a final judgment on the merits, and is thus precluded here. Defendant also argues that Plaintiff's claim is barred by claim preclusion because Kern could have brought a conditions of confinement claim in state court, but failed to do so.

Second, Defendant argues that Kern failed to exhaust his claims. Defendant notes the Prison Litigation Reform Act, 42 U.S.C. § 1997e, requires inmates to exhaust all available administrative remedies before filing suit. Exhaustion requires compliance with administrative regulations ("ARs"). Defendant argues Kern failed to comply with the administrative regulations thrice – first when he did not include the proper administrative claim form; again when he submitted the grievance on the incorrect grievance form; and lastly, when he waited over 30 days to resubmit the grievance. Because Kern did not use all three steps of NDOC's grievance procedure, Defendant argues Kern's claims are unexhausted.

Finally, on the merits, Defendant argues Kern has failed to establish deliberate indifference by Bradburn. To establish deliberate indifference for an Eighth Amendment claim, the plaintiff must show that the prison official was aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and that the prison official actually drew that inference. Defendant notes that the Court's screening order permitted the Eighth Amendment claim to proceed on the allegation that Bradburn was required to wait for a verbal command before closing the sally port door, and that Bradburn knew he was putting Plaintiff at an excessive safety risk by closing the sally port door before being told he was "clear." Defendant argues that here, the evidence shows that the prison had no policy of mandating a verbal clear command before

initiating the close sequence. Instead, officers used other safety options to verify it was safe before initiating the closing sequence, such as listening for one part of the door to open, waiting a few seconds, and then initiating the sequence. Defendant argues the record evidence shows that there is no requirement for a verbal "clear" command because of how slowly the door closes and because of how loud the door is. Further, the evidence in the record establishes that it takes at least ten seconds for the door to close after the officer initiates the close sequence. Finally, Defendant argues there is no requirement for a verbal command, because even if a door closes prematurely, the door stops moving if it encounters something in its way.

Lastly, Defendant argues that he is entitled to qualified immunity. Defendant notes that Kern alleges that he has a constitutional right requiring Bradburn to listen for a verbal command before closing the sally port door. Defendant argues it is undisputed the sally port door closes slowly and makes a very loud noise while closing. Thus, a reasonable officer could have assumed that any individual in the way of the sally port door could simply move forward or backward to avoid the door. Further, as there was no requirement that an officer wait for a verbal command, a reasonable officer would not have known that beginning the closing cycle without a verbal command constituted a constitutional violation. Because there is no clear authority requiring officers to wait for a verbal command, Defendant argues he is entitled to qualified immunity.

Plaintiff's opposition to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment set forth many of the same arguments. In large part, Plaintiff's responsive briefing and dispositive motion reiterates many of the allegations raised in the complaint, without reference to the summary judgment standard.

In opposition to Defendant's motion, Plaintiff argues that Defendant violated his constitutional rights by failing to wait for a verbal command before closing the sally port door. Plaintiff contends that all COs used verbal commands to indicate to the sally port door controller that it was safe to begin the close sequence. Those entering or exiting the sally port door are in a blind spot, Plaintiff argues, and thus there is no other way for the controller to know that it is safe to begin closing the door, absent a verbal command.

Plaintiff further argues that Defendant failed to turn over necessary discovery to Plaintiff

that would help him to prove his case, such as medical reports/documentation, footage of the door functioning, and depositions/declaration of CO Earnest, the escorting CO. Plaintiff argues that Defendant concedes that one of the ways that the escorting officer cues the controlling officer to begin closing the sally port door is via verbal commands. Plaintiff points to interrogatory 16 for support, in which Defendant states he does not "recall if Officer Earnest communicated . . . by either activating the button at the front entry or yelled up to the control room to open the door." Plaintiff further argues that under AR 319.02, COs are expected to follow safe practices. By failing to wait for CO Earnest to provide a clear verbal command, Plaintiff argues, Defendant violated this internal policy.

In support of his own Motion for Summary Judgment, Plaintiff argues Defendant failed to take reasonable care in safeguarding Plaintiff's health and safety by recklessly operating the sally port door. Plaintiff argues Bradburn clearly violated AR 319 (which states that "employees are expected to follow safe practices and cooperate with the safety committees") and AR 329. Plaintiff contends that at the time of his accident, Bradburn could not have seen Plaintiff and CO Earnest at the sally port door; thus, the only way Bradburn could have known when to begin closing the door was by receiving verbal confirmation from CO Earnest. Plaintiff reiterates that Bradburn did not wait for this confirmation. Plaintiff argues Bradburn was aware of an obvious substantial risk to Plaintiff's safety that could arise if he closed the sally port door without verbal confirmation. Nevertheless, he ignored this risk, causing injury to Plaintiff.

**VI.     DISCUSSION**

First, the Court does not find that Plaintiff's claim is barred for failure to exhaust administrative remedies or under the doctrines of claim or issue preclusion.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." Griffin v. Arpaio, 557 F.3d

1117, 1119 (9th Cir. 2009). Proper exhaustion requires the inmate to comply with administrative regulations and procedures. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). If a defendant demonstrates that a prisoner-plaintiff fails to exhaust available remedies, the plaintiff may rebut that with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).

Per Administrative Regulation 740 ("AR 740"), NDOC has a 3-stage grievance process. See ECF No. 34, Ex. D; see also Howard v. Foster, 2:13-cv-01368-RFB-NJK, 208 F. Supp. 3d 1152 (D. Nev. Sept. 23, 2016). At step 1, the inmate may file an informal grievance that is reviewed and evaluated by an inmate caseworker. The informal grievance must be filed within one month of the alleged tort arising. At step 2, a "first level" formal grievance may be filed, in which the inmate appeals the decision on the informal grievance to the warden. At step 3, a "second level" grievance may be filed, in which the inmate appeals the first level decision to the assistant director of operations.

Here, Defendants argue Plaintiff failed to comply with AR 740's procedural requirements in submitting his grievance. They allege his first grievance did not include the mandatory administrative claim form, his second grievance was filed on the wrong paper, and his third and final grievance was untimely filed. Because the final grievance was not submitted timely, it was rejected and became unappealable under AR 740.03(5) ("In the event an inmate's claim is deemed inappropriate for review . . . the inmate may not appeal that decision to the next procedural level of review."). See ECF No. 34, Ex. 5; ECF No. 37.

As this Court has previously noted, "the intent of the exhaustion requirement is to place the facility on notice of issues raised by an inmate and not erect esoteric and irrelevant procedural requirements." Williams v. Allen, No. 2:17-cv-01612-RFB-DJA, 2020 U.S. Dist. LEXIS 94684, *21 (D. Nev. May 29, 2020); see also Griffin, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."). Here, the Court finds that the facility was put on notice by Plaintiff's attempted filing of not one – but three – grievances pertaining to the sally port door. Plaintiff represents to the Court

that he attempted to grieve the issue but met resistance and difficulty. The Court acknowledges that all three grievances that Plaintiff submitted were submitted on a "Nevada Department of Corrections Informal Grievance" form. Regardless of whether Plaintiff failed to include an administrative claim form along with his grievance, or failed to submit the grievance on the proper paper, he had clearly alerted prison staff to his concerns by filing a document that indicated to the facility that it was an informal grievance, and by documenting in detail his alleged injury that arose from a problem with the sally port door. The Court accordingly finds that Plaintiff's claim is not barred for failure to exhaust, as Plaintiff has shown that he attempted to file the grievances correctly, but the challenging procedural requirements in his case made the existing grievance process "effectively unavailable to him." Albino, 747 F.3d at 1172.

The Court further finds that Plaintiff's claim is not barred by either issue or claim preclusion. "A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984). Under Nevada law, issue preclusion applies if (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling was on the merits and has become final; (3) the party against whom the judgment was asserted is the party or is in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008). Claim preclusion exists if (1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case. Id.

The Court finds that this action is not issue precluded, because the issues in this case are not identical to those in the small claims case, and the parties are not the same or in privity. Plaintiff's small claims case was against a different defendant (Director James Dzurenda) for the alleged negligent training and supervision of a different CO (CO Earnest, the escorting officer). See ECF No. 34, Exs. F, G. The small claims judgment summarized Plaintiff's allegations as follows: "Plaintiff alleges the Defendant (Dzurenda) breached his duty of care when he negligently trained and/or supervised the corrections officer who was escorting Plaintiff at the time of the

alleged incident." The small claims court found that Plaintiff "failed to prove his claim by a preponderance of the evidence." This case involves a different party altogether – CO Bradburn. Further, Plaintiff's Complaint in this action alleges that Bradburn acted with deliberate indifference in failing to wait for a "clear" command before closing the sally port door. It does not allege negligent training or supervision by Dzurenda. Because the parties in this litigation are not the same (nor in privity) with the parties in the state court action, and the issues in the two cases are not "identical," the Court finds that issue preclusion does not bar this suit.

For similar reasons, the Court also finds that Plaintiff's claim is not barred by claim preclusion. The parties or their privies are not the same, and it is not clear that the factual allegations in the small claims case would have supported the claim asserted here. That action involved factual allegations of failure to train and supervise by Dzurenda; this action involves factual allegations of a failure to wait for a "clear" command by CO Bradburn, in violation of HDSP policy. Thus, Defendants fail to establish that two of the essential elements of claim preclusion are met.

The Court does find, however, that Plaintiff's Eighth Amendment claim cannot survive summary judgment on the merits. Defendant argues there is no requirement that the CO who operates the sally port door wait for any verbal command from the escorting CO before initiating the close sequence. Instead, Defendant argues, the CO who operates the door uses visual cues and other methods of safety confirmation to verify that it is safe to begin closing the door. Defendant produced the affidavit of HDSP Associate Warden Jennifer Nash to support these claims. Plaintiff disputes this – he argues that "verbal communication was used by everyone so that the controller was aware as to taking proper measures as to safely close or open the door," and that "there is no other means or manner of visual observation available as to the position of the persons inside/outside the sally port door." Plaintiff contends that the individuals inside the sally port door are "in the blind," such that the use of a verbal cue is the only way by which the controller can be assured that it is safe to begin closing the door. However, Plaintiff has not adduced any evidence to support these allegations, on which his entire deliberate indifference claim is based. There is simply no evidence in the record that HDSP had any official policy, or that COs had an unofficial

practice, of giving a "clear" command before initiating a closing sequence. There is also no evidence in the record that Defendant acted in violation of any safety policy, or that the lack of a safety policy regarding the sally port door led to any alleged injury of Plaintiff's. Because Plaintiff has failed to "produce specific facts, by affidavit or other evidence, showing a genuine issue" of fact, his claim cannot survive summary judgment. Anderson, 477 U.S. at 256.

The Court rejects Plaintiff's argument that he lacks the evidence he requires to oppose summary judgment because he was deprived of relevant discovery material. The Court extended the discovery deadline in this case by sixty days, to June 11, 2021. Plaintiff filed his own Motion for Summary Judgment well after the June 11, 2021 discovery deadline had passed. Plaintiff does not explain why he failed to timely serve upon Defendant the discovery requests for the materials and evidence he now claims would support his allegations. Because the record, taken as a whole, could not lead a reasonable jury to find for Plaintiff on his deliberate indifference claim, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. Scott, 550 U.S. at 380 (2007).

### VII. CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 42) is **DENIED.**

The Clerk of the Court is directed to close this case and enter judgment accordingly.

**DATED: March 16, 2022**

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**